UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEIL F.,

          Plaintiff,                   Case No. 4:22-cv-10789
                                        District Judge Shalina D. Kumar
v.                               Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

          Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 10),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 13) and AFFIRM THE COMMISSIONER'S DECISION**

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment

(ECF No. 13), and **AFFIRM** the Commissioner's decision.

II.    **REPORT**

      Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final

decision of the Commissioner of Social Security (Commissioner) denying his

application for Disability Insurance (DI) benefits.  This matter is before the United

States Magistrate Judge for a Report and Recommendation on Plaintiff's motion

for summary judgment (ECF No. 10), the Commissioner's cross-motion for summary judgment (ECF No. 13), Plaintiff's reply (ECF No. 14), the Commissioner's sur-reply (ECF No. 16), and the administrative record (ECF No. 8).

### A.    Background and Administrative History

In his July 18, 2019 application for disability insurance benefits (DIB), Plaintiff alleges his disability began on May 1, 2018, at the age of 50.  (ECF No. 8, PageID.262-263.)  In his disability report, he lists bilateral varicose veins, right hand surgery with a tumor present, major depressive disorder, anxiety disorder, and chronic low back pain as limiting his ability to work.  (ECF No. 8, PageID.279.)  His application was initially denied on February 6, 2020.  (ECF No. 8, PageID.125-126.)

Plaintiff requested a hearing by an ALJ.  (ECF No. 8, PageID.183-184.)  On September 18, 2020, ALJ John Dodson held a very brief hearing (ECF No. 8, PageID.106-110), but became unavailable to issue a decision (see ECF No. 8, PageID.59, 78).  Accordingly, on March 16, 2021, ALJ Anthony Smereka held a second hearing at which Plaintiff and a vocational expert (VE), Diane Regan, testified.  (ECF No. 8, PageID.76-105.)  On March 25, 2021, ALJ Smereka issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (ECF No. 8, PageID.56-75.)

2

Plaintiff submitted a request for review of the hearing decision/order.  (ECF No. 8, PageID.252-254.)  However, on February 15, 2022, the Appeals Council denied Plaintiff's request for review.  (ECF No. 8, PageID.27-33.)  Thus, ALJ Smereka's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on April 12, 2022.  (ECF No. 1.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 398 pages of medical records, which were available to the ALJ at the time of his March 25, 2021 decision.  (ECF No. 8, PageID.398-796 [Exhibits 1F-21F].)  These materials will be discussed in detail, as necessary, below.

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 1, 2018, the alleged onset date.  (ECF No. 8, PageID.61.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: depressive disorder, anxiety disorder, and status post-right hand tumor excision.  (ECF No. 8, PageID.61-62.)  At **Step 3**, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (ECF No. 8, PageID.63-64.)

3

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity (RFC) and determined that Plaintiff had the RFC:

> to perform light work . . . with additional limitations. He cannot work
> at unprotected heights or around dangerous moving machinery. He
> cannot climb ladders, ropes, or scaffolds, and cannot drive or use foot
> controls in the course of employment. He can frequently handle and
> finger with the right dominant upper extremity. He has the ability for
> simple, routine, repetitive tasks with a specific vocational preparation
> (SVP) of one or two, for routine work is that which does not require
> changes in work settings or duties more than once per month. He
> should avoid work with the general public, but can have occasional
> contact with co-workers and supervisors. He must avoid work at a
> fast-production pace, where the pace is set by others, such as
> conveyor belt or assembly line work.

(ECF No. 8, PageID.64-68.) At **Step 4**, the ALJ determined that Plaintiff was

unable to perform any past relevant work. (ECF No. 8, PageID.68.) At **Step 5**,

considering Plaintiff's age, education, work experience, and RFC, the ALJ

determined that there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform, such as packer, sorter, and assembler. (ECF

No. 8, PageID.69.) The ALJ therefore concluded that Plaintiff had not been under

a disability, as defined in the Social Security Act, since May 1, 2018. (ECF No. 8,

PageID.69.)

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

4

if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that

5

Case 4:22-cv-10789-SDK-APP   ECF No. 18, PageID.882   Filed 05/12/23   Page 6 of 32

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff argues that the ALJ's decision is unsupported by substantial evidence because: (1) the RFC assessment does not include the entirety of his documented limitations; (2) the ALJ erred at Step 2 by failing to find his varicose veins and venous insufficiency to be severe impairments; (3) the ALJ erred in evaluating his subjective symptoms; and (4) the ALJ improperly analyzed medical opinions.  (ECF No. 10, PageID.801-808-824.)  The Commissioner opposes Plaintiff's motion, arguing that the Court should find no error on the bases asserted and that substantial evidence supports the ALJ's decision.  (ECF No. 13, PageID.834-860.)  In his reply brief, Plaintiff reiterates his arguments, but adds an assertion that the ALJ failed to fully develop the record (ECF No. 14, PageID.863), and the Commissioner responds to this argument in its own sur-reply (ECF No.

16).  I will address each argument, though in a different order than presented by Plaintiff, below.

### 1.    The Court should find no harmful error at Step 2

Plaintiff argues that the ALJ erred at Step 2 by failing to include varicose veins and venous insufficiency as severe impairments.  (ECF No. 10, PageID.815-818.)  Specifically, he asserts that the ALJ provided inadequate explanations for his findings, and that both impairments fit the requirements to be considered severe.  (ECF No. 10, PageID.815-818.)

### a.    Step 2 Standard

Step 2 requires an ALJ to determine if a claimant suffers from any severe impairments.  20 C.F.R. § 404.1520(a)(4)(ii), (c).  Plaintiff bears the burden at Step 2 of establishing that he suffers from a severe impairment.  *See Walters*, 127 F.3d at 529.  An impairment is considered severe if it "significantly limits your physical or mental ability to do basic work activities[.]"  20 C.F.R. § 404.1520(c).  "An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a *slight abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ."  SSR 85-28, 1985 WL 56856, at *3 (emphasis added).

"In the Sixth Circuit, the severity determination is 'a de minimis hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).   In other words, the Step 2 severity analysis is only a threshold determination.   Sixth Circuit precedent readily establishes that failure to find an impairment severe at Step 2 of the sequential analysis is not reversible error if the ALJ found another impairment severe and thus continued with the five-step evaluation.   *See, e.g., Fisk v. Astrue*, 253 F. App'x 580, 583-84 (6th Cir. 2007); *Anthony*, 266 F. App'x at 457. Indeed, "any alleged omission from the list of severe impairments does not undermine the ALJ's decision" so long as the ALJ considers Plaintiff's "severe and nonsevere impairments in the remaining steps of the sequential analysis." *Dickey-Williams v. Comm'r of Soc. Sec.*, 975 F.Supp.2d 792, 822-23 (E.D. Mich. 2013) (quotation marks and citation omitted).   Accordingly, "[t]he fact that some of [the plaintiff's] impairments were not deemed to be severe at step two [may be] legally irrelevant." *Anthony*, 266 F. App'x at 457.

### b.    Analysis

The Court should decline to remand on the basis of any error at Step 2. First, as the Commissioner points out (ECF No. 13, PageID.842), Plaintiff, in his disability report, did not list venous insufficiency as a condition limiting his ability to work (ECF No. 8, PageID.279), nor discuss the specific condition in his hearing

testimony (ECF No. 8, PageID.76-105), so the ALJ would not have been prompted to consider venous insufficiency at Step 2.  Further, any alleged error in failing to include venous insufficiency as a severe impairment would be harmless, as the ALJ found other impairments severe and continued with the sequential evaluation, considering Plaintiff's varicose vein condition, from which venous insufficiency (dull aching, swelling, pain, and tingling in the legs)[1] may result, both at Step 2 and in his RFC finding.  (ECF No. 8, PageID.61-62, 65, 67-68.)  *Dickey-Williams*, 975 F.Supp.2d at 822-23.

Indeed, in support of his finding at Step 2 that Plaintiff's varicose vein impairment was not severe, the ALJ necessarily also addressed the symptoms associated with venous insufficiency, stating:

> Treatment notes show that the claimant had symptoms stemming from varicose veins years prior to the alleged onset date.  He underwent bilateral ablations in 2012 and 2013 for this condition (Exhibit 1F, p. 5-6, 21).  These were successful, as he denied experiencing severe leg pain in mid-2013 (Exhibit 1F, p. 24).  Although he has complained of lower extremity pain on occasion since then, and has continued to wear compression stockings since, there is no evidence showing that he has required additional treatment or intensive care.  In addition, physical examination findings make no mention of edema in the lower extremities.  Moreover, he performed heavy exertional work for a number of years after his procedures.  For these reasons, I find this impairment non-severe.

---

[1] *See* https://www.pennmedicine.org/for-patients-and-visitors/patient-information/conditions-treated-a-to-z/venous-insufficiency#:~:text=As%20a%20result%2C%20blood%20pools,or%20carrying%20extra%20weight%20(obesity).

(ECF No. 8, PageID.62.)

Plaintiff also challenges the ALJ's determination that his varicose veins were a non-severe impairment.  In so doing, Plaintiff cites to treatment records documenting his complaints of bilateral lower extremity pain and tingling (ECF No. 10, PageID.816-817 (citing ECF No. 8, PageID.709-711, 717-719, 760, 770-771).)  But the ALJ clearly acknowledged Plaintiff's occasional complaints in the above-quoted determination, and it is not within the province of the Court to re-weigh this evidence.  *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2001) ("This court reviews the entire administrative record, but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ.").  Plaintiff also cites to records he asserts contradict the ALJ's finding that apart from Plaintiff's continued use of compression stockings, there is no evidence of additional treatment or intensive care (ECF No. 10, PageID.816-817), but these are the same records cited above which documented his complaints of pain and tingling.  So far as the I can surmise, they do not document treatment for Plaintiff's varicose veins beyond the use of compression socks, nor does Plaintiff direct the Court to such records.

Plaintiff's assertions that the ALJ improperly considered his return to work following the 2012 and 2013 ablations because they occurred well before his May

1, 2018 alleged onset date, and that his treating physician Dr. Musib Gappy, M.D., opined that his varicose veins were a severe impairment (ECF No. 10, PageID.817), also fail.  That Plaintiff continued to work for many years following his diagnosis and treatment for varicose veins is a valid consideration and only one part of the ALJ's justification for his findings.  *See Woodard v. Astrue*, No. 3:07-1162, 2009 WL 2065781, at *9 (M.D. Tenn. July 10, 2009); *Horak v. Astrue*, No. 3:08-CV-347, 2010 WL 797915, at *7 (E.D. Tenn. March 3, 2010).  Further, as will be discussed in greater depth below, the ALJ considered, and properly discounted, Dr. Gappy's opinion.

Finally, Plaintiff inaccurately asserts that "throughout the rationale supporting the RFC assessed, the ALJ does not mention Plaintiff's bilateral lower extremity pain, swelling, and numbness."  (ECF No. 10, PageID.817 (citing ECF No. 8, PageID.64).)  Although the ALJ could have been much more robust and specific in his evaluation of Plaintiff's varicose vein impairment, he did address those symptoms before concluding that the alleged intensity of those symptoms was inconsistent with the medical and other evidence in the record, stating:

> The claimant has alleged that he suffers from varicose veins, lower back pain, depressive disorder, anxiety disorder, and effects of a right hand tumor removal.  He has indicated that these conditions cause him to experience pain, numbness, swelling, sleep disturbance, and panic attacks.  He has stated that he has difficulty lifting, sitting, standing, walking, bending, squatting, kneeling, reaching, climbing stairs, and using his hands.

11

\* \* \*

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(ECF No. 8, PageID.65.)  Again, it is not within the province of the Court to re-weigh this evidence.  *Reynolds*, 424 F. App'x at 414.  Nor is the ALJ required to directly address every available piece of evidence in his decision.  *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (citation and quotations omitted); *see also Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 250 (6th Cir. 2015).

### 2.   Next, the Court should find that Plaintiff has demonstrated no error in the ALJ's analysis of medical opinions

Plaintiff argues that the ALJ improperly analyzed the opinions of mental health professional Haitham Safo and Dr. Musib Gappy, and erred by failing to analyze the opinion of Dr. Farideddin Nossoni altogether.  For the reasons that follow, I disagree.

### a.   Standard

As Plaintiff filed his application after March 17, 2017, the ALJ reviewed the subject medical opinions according to the standards provided in 20 C.F.R. §

12

404.1520c, which states, "We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of the medical opinions submitted and articulate the findings using the following factors: supportability, consistency, relationship with the claimant, and specialization, with supportability and consistency being the most important.  20 C.F.R. § 404.1520c(b)(2) and (c).

> **b.   Mental health professional Haitham Safo, LPC**
>
> **i.   Mr. Safo's Medical Source Statement (MSS)**

On August 9, 2019, Haitham Safo, LPC, completed a MSS indicating that Plaintiff had been seen on a bi-weekly basis since April 2019.  (ECF No. 8, PageID.560.)  He checked boxes identifying Plaintiff's symptoms, including difficulty thinking and concentrating, decreased energy, easy distractibility, and memory impairment, and opined that Plaintiff would be "off task" 25% of a typical workday due to these symptoms interfering with his attention and concentration. (ECF No, 8, PageID.561.)  Further, Mr. Safo opined that Plaintiff would be seriously limited but not precluded from making simple work related decisions, performing at a consistent pace, and responding appropriately to changes in a routine work setting, but unable to meet competitive standards in completing a

normal workday or week without interruptions from his psychological symptoms, or in dealing with normal work stress.  (ECF No. 8, PageID.562.)  In so doing, he attached Plaintiff's psychotherapy intake note and a psychiatry progress note. (ECF No. 8, PageID.564-569.)

### ii.     ALJ Smereka did not find Mr. Safo's opinion persuasive

ALJ Smereka found Mr. Safo's opinion unpersuasive, stating:

Haitham Safo, LPC, a mental health professional, offered a statement in August 2019.  He indicated that the claimant suffers from anhedonia,[2] decreased energy, anxiety, feelings of guilt/worthlessness, emotional withdrawal, memory impairment, distraction, and sleep disturbance.  He then opined that he was seriously limited in the ability to maintain attention for two hour segments, maintain regular attendance and be punctual, make simple work-related decisions, perform at a consistent pace, accept instructions and respond appropriately to criticism, get along with co-workers or peers, and respond appropriately to changes in a routine work setting.  Mr. Safo also indicated that the claimant was unable to meet competitive standards when it came to working in coordination or proximity to others without being distracted, completing a normal workday/week without interruptions from psychologically based symptoms, and dealing with normal stress.  He opined that the claimant would miss more than four days of work per month as well.  (Exhibit 7F, p. 2-5).

I do not find this opinion persuasive.  Treatment notes from Mr. Safo do not support the significant limitations assessed.  As discussed above, the claimant has been found to have relatively normal mental status examinations during his visits there.  Moreover, the records

---

[2] Anhedonia is a symptom of mental health disorders and "refers to the reduced ability to experience pleasure."  *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3181880/#:~:text=Anhedonia%20 refers%20to%20the%20reduced%20ability%20to%20experience%20pleasure.,psy chiatric%20disorders%20and%20maladaptive%20behaviors.

provided show that he was feeling better in August 2019, after receiving treatment for a few months.  As such, the opinion of Mr. Safo is not consistent with the treatment notes from his facility.

(ECF No. 8, PageID.66-67.)

### iii.    Analysis

For the reasons that follow, the Court should find no error in the ALJ's assessment of Mr. Safo's opinion.

Plaintiff challenges the ALJ's reasoning that treatment notes do not support the limitations assessed because he has been found to have relatively normal mental status examinations during his visits to the facility, citing to records documenting "verbose speech, motor activity agitation, thought content preoccupied, manipulative/irritable interview behavior, cognitive functioning preoccupied, and variably impaired functional status."  (ECF No. 10, PageID.821 (citing ECF No. 8, PageID.564, 567, 575, 582, 589, 592, 594, 597, 599, 604, 606, 609, 674, 679, 681, 684, 697, 702, 734, 739, 744, 753, 756); *see also* ECF No. 14, PageID.864-866.)  A review of the records cited, spanning several months, do confirm some abnormal findings, including those listed above, but should not lead the Court to find error in the ALJ's analysis.

The records demonstrate mixed, as opposed to extreme, mental health symptoms.  Plaintiff's April 2019 intake notes indicate that Plaintiff exhibited variable attention and concentration, constricted affect, and anxious mood, but fair

15

insight and judgment, and intact memory.  (ECF No. 8, PageID.567.)  However, in

May, July, and August 2019, Plaintiff improved, apparently exhibiting on

examination good insight, judgment, and attention/concentration (ECF No. 8,

PageID.589, 594, 599, 606), consistent with the ALJ's finding that Plaintiff was

feeling better in August 2019 (ECF No. 8, PageID.67).  And psychiatry progress

notes in and beyond August 2019 generally demonstrate anxious mood and

irritable behavior, but fair to good insight, judgment, and attention/concentration,

as well as intact memory.  (ECF No. 8, PageID.564, 606, 611, 671, 676, 681, 684,

697, 702, 734, 739, 744, 753, 756.)  Accordingly, the I see no error in the ALJ's

findings.  A review of the record supports the ALJ's summaries, and simply

pointing to contrary evidence is insufficient to support the conclusion that the

ALJ's findings are unsupported by substantial evidence.  *See Blakley*, 581 F.3d at

406.

### c.    Primary care provider Dr. Musib Gappy, M.D.

### i.    Dr. Gappy's statement

In a letter dated January 26, 2021, Plaintiff's primary care provider Dr.

Musib Gappy, M.D., stated:

> My patient, Mr. Neil F[.] suffers from varicose veins of the lower
> extremities, a traumatic injury to his right wrist, and chronic low back
> pain that radiates to his buttocks.  Mr. F[.] continues to have problems
> with extended periods of standing due to pain of the lower extremities.
> My patient is limited with standing for long periods due to the
> problems listed above and would not be able to sustain full-time

employment that would require him to be on his feet for [a] majority of the day.

(ECF No. 8, PageID.760.)

### ii.   ALJ Smereka found Dr. Gappy's statement minimally persuasive

The ALJ evaluated Dr. Gappy's statement, finding:

Musib Gappy, M.D., the claimant's primary care provider, offered a statement on the claimant's functioning.  He opined that the claimant continues to have problems with extended standing for long periods and would not be able to sustain full time employment that would require him to be on his feet for a majority of the day.  He based this on the claimant's varicose vein disorder and lower back pain (Exhibit 19F).

The opinion of Dr. Gappy is found minimally persuasive.  The opinion is brief and limited, and does not provide much explanation as to why the claimant is so limited.  More importantly, the treatment notes from Dr. Gappy do not support such significant deficits in standing and walking.  Treatment notes from his office routinely state that the claimant has normal gait and station, and make no mention of difficulties with ambulation.  In fact, there is relatively little discussion of any musculoskeletal issues (Exhibit 6F; 20F).  For these reasons, I find the opinion of Dr. Gappy unsupported by and inconsistent with the record.

(ECF No. 8, PageID.67.)

### iii.   Analysis

Plaintiff summarizes Dr. Gappy's statement and argues that "the ALJ fails to provide any limitations whatsoever with regard to [his] ability to stand, and further fails to account for the multiple visits informing and supporting the opinion.  (ECF No. 8, PageID.524, 708-711, 768-771)."  (ECF No. 10, PageID.822; *see also* ECF

No. 14, PageID.863-864.)  He also seems to challenge the ALJ's finding on the basis that the ALJ gave more weight to the state agency consultants' opinions, despite the fact that they did not have an examination or treatment relationship. (ECF No. 10, PageID.823.)

The first record cited by Plaintiff mostly just provides his medical history. (ECF No. 8, PageID.524.)  The others partially contain Plaintiff's diagnosis history and subjective statements regarding his symptoms of leg pain (ECF No. 8, PageID.708-710, 768-771), which the ALJ considered, as will be discussed more fully below, but need not blindly accept, *see Cohen v. Sec'y of Health and Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992), as well as examination findings which support the ALJ's decision to discount Dr. Gappy's opinion.  For example, the records show that Plaintiff reported no swelling in the extremities and no muscle weakness, and had limited range of motion, but normal tone, gait, and station, which is the ability to stand.  (ECF No. 8, PageID.710-711, 770-771.)  Thus, the ALJ could reasonably conclude that such findings contradict Dr. Gappy's opinion that Plaintiff could not stand for long periods.  And it bears noting that Dr. Gappy's opinion itself consists of mostly Plaintiff's diagnoses, which alone say nothing of the severity of a claimant's symptoms or any resulting functional limitations, a statement regarding standing, with no specific limitation, and a conclusion regarding Plaintiff's ability to work, which is an issue reserved to the

18

Commissioner.  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014)

("[D]isability is determined by the functional limitations imposed by a condition,

not the mere diagnosis of it.") (citing *Higgs*, 880 F.2d at 863; 20 C.F.R. §

404.1520b(c)(3) (Commissioner responsible for making disability determination).

 Further, Plaintiff's argument that it was error for the ALJ to find the

opinions of state agency consultants more persuasive than Dr. Gappy's opinion

because they neither had a treatment nor examining relationship with him (ECF

No. 10, PageID.823), is unavailing.  Under the current regulations, summarized

above, an ALJ need not afford specific weight to the opinion of a treating source.

20 C.F.R. § 404.1520c(a).  Supportability and consistency, *not* treatment or

examining relationship, are the most important factors.  20 C.F.R. §

404.1520c(b)(2); *see also Hardy v. Comm'r of Soc. Sec.*, 554 F.Supp.3d 900, 905-

06 (E.D. Mich. 2021).

 Finally, for the first time in his reply brief, Plaintiff argues that "if the ALJ

found that [his] claims as well as Dr. Gappy's opinion were inconsistent with the

records, the ALJ should have re-contacted Dr. Gappy as it is his duty[.]"  (ECF No.

14, PageID.863.)  Although the Commissioner responded to this argument in a sur-

reply (ECF No. 16), the Court need not analyze this argument, as it was made for

the first time in Plaintiff's reply brief and, therefore, waived.  *See Grand Traverse*

*Band of Ottawa and Chippewa Indians v. Blue Cross & Blue Shield of Mich.*, 391

F.Supp.3d 706, 715 n.5 (E.D. Mich. 2019) (citing *Scottsdale Ins. Co. v. Flowers*,

513 F.3d 546, 553 (6th Cir. 2008)) ("Arguments raised for the first time in

a reply brief are considered waived."). In any case, "[T]he ALJ did not have a

special duty to develop the record because [the claimant] was represented by

counsel" before the ALJ. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th

Cir. 2013) (internal citation omitted). Moreover, as Defendant points out in its sur-

reply brief, "[t]he duty to recontact a treating physician was eliminated, effective

March 26, 2012." (ECF No. 16, PageID.873) (citing *How We Collect and*

*Consider Evidence of Disability*, 77 Fed. Reg. 10651 (Feb. 23, 2012) (codified at

20 C.F.R. § 404.1520b)). Such a decision is a matter of the ALJ's discretion. 20

C.F.R. § 404.1520b(b); *Spence v. Comm'r of Soc. Sec. Admin.*, No. 2:18-cv-13625,

2020 WL 1818041, at *8 (E.D. Mich. Jan. 23, 2020), *report and recommendation*

*adopted* 2020 WL 1329437 (E.D. Mich. Mar. 23, 2020) ("However, the regulations

governing an ALJ's duty to recontact were amended effective March 26, 2012,

rendering the decision to recontact discretionary.") (internal citations omitted).

### d.    Consultative examiner Dr. Farideddin Nossoni, D.O.

Lastly, Plaintiff argues that it was error for the ALJ not to analyze the

opinion of consultative examiner Dr. Farideddin Nossoni, D.O. According to

Plaintiff, Dr. Nossoni's opinion in combination with his own testimony regarding

his finger impairment, should have prompted the ALJ to include limitations in the

RFC with regard to his ability to handle, finger, feel, and reach.  (ECF No. 10, PageID.823-824; ECF No. 14, PageID.864.)

"A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ."  20 C.F.R. § 404.1513(a)(2).  The Court should find that, contrary to Plaintiff's argument, Dr. Nossoni provided no such opinion here.  Rather than opine upon Plaintiff's physical limitations, Dr. Nossoni provided his examination findings, stating, in part:

> Grip strength is 5/5 on the left and 3/5 on the right as tested grossly today.  The left hand has full digital dexterity and the patient had mild to moderate difficulty picking up a coin, buttoning and opening a door with the right hand but could do so.

(ECF No. 8, PageID.627-628.)  And although the ALJ did not examine Dr. Nossoni's statements in that portion of his opinion where he evaluated medical opinions, he did acknowledge these findings, reasoning that there is no indication Plaintiff sought much follow-up care, and correspondingly limit Plaintiff to light work and frequent handling and fingering with the right upper extremity.  (ECF No. 8, PageID.64, 66.)  Accordingly, the Court should find no error on the basis that the ALJ failed to evaluate Dr. Nossoni's statements.

**3.    The Court should find no error in the ALJ's evaluation of Plaintiff's impairments or subjective symptoms, and that the RFC is supported by substantial evidence**

Plaintiff also argues that the RFC is unsupported by substantial evidence because the ALJ failed to properly evaluate his subjective symptoms or to include in the RFC the entirety of his documented limitations.  (ECF No. 10, PageID.809-815; ECF No. 14, PageID.862-866.)  In so doing, he asserts that "[a]t most, the evidence demonstrates that [he] should be limited to a Sedentary exertional level, which . . . would call for a finding of disabled due to his age, education, and previous work history."  (ECF No. 10, PageID.815.)

**a.    RFC determination**

The Plaintiff bears the burden of proof at Steps 1-4, including proving her RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

Plaintiff's RFC is "the most [he] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1545(a).  The determination of Plaintiff's RFC is an issue reserved to the Commissioner and must be supported by substantial evidence.  20 C.F.R. § 404.1527(d)(2).  Pursuant to Social Security Ruling (SSR) 96-8p, the RFC assessment must include:

> [A] narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.  "The ALJ need not decide or discuss uncontested issues, 'the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record.'"  *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 548 (6th Cir. 2002) (citation omitted).

**b.    Physical limitations**

Plaintiff argues that "the ALJ failed to include the full picture of limitations caused by [his] venous insufficiency, varicose veins, tumor excision of the right upper extremity, and back pain."  (ECF No. 10, PageID.810.)  Specifically, he asserts that a reduced range of light work, which requires six hours of standing/walking in an eight-hour workday, and no sit/stand option or postural/manipulative limitations, fails to account for his constant and severe lower extremity pain, swelling, and numbness, low back pain, and upper extremity pain, numbness, and weakness.  (ECF No. 10, PageID.811-812; ECF No. 14, PageID.862-864.)[3]

Plaintiff cites to records he claims support his complaints of pain, swelling, and numbness aggravated by movement and weight-bearing, as well as his own testimony and Function Reports.  (ECF No. 10, PageID.812-813 (citing ECF No. 8, PageID.81-84, 99, 305-306, 310, 356-357, 361, 708-711, 717-719, 760, 768-770).)  But a review of these records reveals that they predominantly contain Plaintiff's subjective statements regarding his symptoms (ECF No. 8, PageID.708-

_____

[3] Plaintiff further states, "[T]hose additional restrictions on the enumerated exertional abilities may not be tolerated at the Light level within the perimeters of the assessed RFC, and were not posed to the VE."  (ECF No. 10, PageID.811.)  To the extent Plaintiff is attempting frame this argument as a challenge to the ALJ's hypothetical, he is actually challenging only the RFC determination.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013).

710, 717, 768-770), which the ALJ need not blindly accept, *Cohen*, 964 F.2d at

529, and the same is obviously true of Plaintiff's testimony and Function Reports.

Further, the ALJ considered Plaintiff's statements regarding his physical

impairments and the associated medical records throughout his decision, stating:

> Treatment notes show that the claimant had symptoms stemming from
> varicose veins years prior to the alleged onset date. He underwent
> bilateral ablations in 2012 and 2013 for this condition (Exhibit 1F, p.
> 5-6, 21). These were successful, as he denied experiencing severe leg
> pain in mid-2013 (Exhibit 1F, p. 24). Although he has complained of
> lower extremity pain on occasion since then, and has continued to
> wear compression stockings since, there is no evidence showing that
> he has required additional treatment or intensive care. In addition,
> physical examination findings make no mention of edema in the lower
> extremities. Moreover, he performed heavy exertional work for a
> number of years after his procedures. For these reasons, I find this
> impairment non-severe.
>
> As for his back, the claimant reported experiencing pain during an
> emergency room visit in August 2017. He indicated that [t]his
> occurred after playing with his kids. Upon exam, he exhibited pain
> and spasm in the lumbar spine, but normal range of motion and no
> tenderness. Based on these findings, he was diagnosed with a lumbar
> strain (Exhibit 5F, p. 4-8). There is no mention of back issues again
> until a consultative examination in January 2020, where he described
> suffering from back pain for years, with radiation in to [sic] his lower
> extremities. A physical examination was performed, which showed a
> normal gait, no paravertebral muscle spasms, and a negative straight
> leg raise. He also demonstrated no difficulty getting on and off the
> exam table and heel/toe walking, and only mild difficulty squatting.
> Diagnostic imaging was also obtained, which revealed only mild
> degenerative changes (Exhibit 11F). He has brought up back pain in a
> few other occasions, but has not sought more than conservative care
> for this condition (Exhibit 15F, p. 2-5; 20F, p. 7-12). He
> acknowledged at hearing that no further imaging has been obtained
> for his back. Based on the limited objective evidence to support a
> pinched nerve, I find his back impairment to be non-severe.

\* \* \*

The claimant has alleged that he suffers from varicose veins, lower back pain, depressive disorder, anxiety disorder, and effects of a right hand tumor removal.  He has indicated that these conditions cause him to experience pain, numbness, swelling, sleep disturbance, and panic attacks.  He has stated that he has difficulty lifting, sitting, standing, walking, bending, squatting, kneeling, reaching, climbing stairs, and using his hands.  He testified that he is able to stand for no more than ten to fifteen minutes and sit for up to thirty minutes.  He has explained that he needs to elevate his legs throughout the day.  He has also reported trouble concentrating, focusing, remembering, understanding, following instructions, completing tasks, and getting along with others.  Despite his allegations, he has admitted that he can maintain his personal hygiene, prepare simple meals, perform some household chores, drive, shop for necessities, manage his finances, and spend time with others (Exhibit 1E; 4E; 6E; 9E; Hearing testimony).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

\* \* \*

In terms of his physical issues, the claimant was found to have a tumor in his hand in August 2017.  This was excised shortly thereafter (Exhibit 2F; 3F, p. 1-35).  There is no indication that he sought much follow up care, although he testified that he participated in physical therapy for three months.  He reported experiencing tightness and tingling in his right hand during a consultative examination in January 2020.  Upon exam, he demonstrated 3/5 grip strength on the right, and mild to moderate difficulty picking up a coin, buttoning, and opening a door with his right hand (Exhibit 11F).  He testified that he cannot carry more than ten pounds in the right hand, but acknowledged having no problems with his left hand.  There is no evidence to show

26

ongoing treatment for his hand condition.  Nonetheless, weight restrictions and manipulative limitations have been included above to account for his issues.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the record does not support such significant limitations.  He has not received much treatment for his physical impairments.  When he has sought care, physical examinations have not revealed more significant deficits than those noted above.  In addition, his mental health symptoms appear to stabilize with appropriate treatment.  While he has experienced exacerbations in reaction to personal stressors, these seem to resolve in a short time with care.

(ECF No. 8, PageID.62, 65-66.)  And the examination records Plaintiff cites do not

demonstrate error in the ALJ's findings, mandate a different interpretation, or

necessarily support greater limitations than those imposed by the RFC.  Upon

examination in July 2020, for example, Plaintiff was found to have tenderness and

limited range of motion, but normal muscle tone, no extremity cyanosis or edema,

and a normal gait.  (ECF No. 8, PageID.711.)  Another note from July 2020

provides that Plaintiff "has a normal arterial physical examination and very

minimal venous insufficiency."  (ECF No. 8, PageID.719.)  Finally, upon

examination in January 2021, Plaintiff was found to have normal muscle tone, no

extremity cyanosis or edema, normal movement of all extremities, and a normal

gait and station.  (ECF No. 8, PageID.771.)

Plaintiff cites to the findings of a consultative examination conducted on

January 25, 2020, revealing limited range of motion of the bilateral hands, a 3/5

grip strength on the right hand, and moderate difficulty but ability to pick up a coin, button, and open a door (ECF No. 10, PageID.812 (citing ECF No. 8, PageID.627)), and asserts that this examination is consistent with his testimony regarding his physical impairments.  However, as described above, this is not a medical opinion regarding his limitations, and the ALJ acknowledged these findings but reasoned that there is no indication Plaintiff sought much follow-up care, and correspondingly limited Plaintiff to light work and frequent[4] handling and fingering with the right upper extremity.  (ECF No. 8, PageID.64, 66.) Plaintiff also cites to Dr. Gappy's opinion in support of his argument that the RFC is unsupported by substantial evidence, but as described in greater detail above, the ALJ appropriately found this opinion only minimally persuasive.

### c.    Mental limitations

Additionally, Plaintiff cursorily asserts:

> With regard to the mental limitations . . ., the ALJ fails to consider the full-picture of his mental impairments that would result in additional limitations not posed to the VE, or that would result in, and/or contribute to, the likelihood of him being excessively off-task. Therefore, the paragraph B criteria are satisfied.

(ECF No. 10, PageID.814.)  He provides no specific citations or substance for this argument.  Accordingly, this argument is waived.  "'[I]ssues adverted to in a

---

[4] In the Social Security context, "frequent" is a term of art, and "means occurring from one-third to two-thirds of the time."  SSR 83-10, 1983 WL 31251, at *6.

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'" *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995) (citation omitted)).  *See also Henderson v. Comm'r of Soc. Sec.*, No. 14-12675, 2015 WL 2063096, at *2 (E.D. Mich. May 4, 2015) ("[A] plaintiff cannot simply claim that the ALJ erred while leaving it up to the Court to scour the record to support this claim.") (quotation marks and citation omitted).

> **d.     Evaluation of subjective symptoms under SSR 16-3p**

The Court should also find no error in the ALJ's assessment of Plaintiff's subjective symptoms.

To determine whether a claimant is disabled, an ALJ must consider all of a claimant's symptoms and the extent to which those symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. § 404.1529(a), (c); SSR 16-3p, 2017 WL 5180304, at *2. This involves a two-step process.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce [the] individual's symptoms, such as pain."  SSR 16-3p, 2017 WL 5180304, at *3; *see also* 20 C.F.R. § 404.1529.

"Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ."  SSR 16-3p, 2017 WL 5180304, at *3.

Plaintiff lists factors to be considered under SSR 16-3p, which include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of the individual's medication(s); treatment beyond medication for relief of pain or other symptoms; any measures used to relieve the individual's pain or other symptoms; and any other factors concerning functional limitations due to pain or other symptoms.  20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *7-8.  (ECF No. 10, PageID.819-820.)  He then briefly asserts that the ALJ failed to properly evaluate his physical and mental symptoms, citing generally to his testimony and Function Reports, as well as the same medical records he cited in his argument that the ALJ failed to include the entirety of limitations in the RFC.  (ECF No., PageID.820-821.)  In doing so, he is really just asking the Court to re-weigh the evidence, which is prohibited by the applicable standard of review.  *Bass*, 499 F.3d at 509.  Accordingly, for all of the same

reasons provided in much greater detail above, the Court should find no error in the ALJ's assessment of Plaintiff's subjective symptoms.

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  Plaintiff has not shown legal error that would upend the ALJ's decision, which is well supported by substantial evidence.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 10), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  May 12, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE